**Reversed and Rendered in Part, Reversed and Remanded in Part, and Substitute Opinion filed March 3, 2022.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-20-00427-CV

---

### BBVA USA F/K/A COMPASS BANK, Appellant

### V.

### RICHARD FRANCIS, Appellee

---

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2017-79795**

---

### SUBSTITUTE OPINION

We issued our opinion in this case on January 6, 2022. Thereafter, appellee Richard Francis filed a motion for rehearing asking this court to modify its judgment to reinstate third-party claims brought below by Francis against nonparties to this appeal. We withdraw our previous opinion, vacate our previous judgment, and issue this substitute opinion and judgment. We deny Francis's motion for rehearing but modify the opinion and the judgment to clarify the scope of the court's holding and

judgment.

In this case, we address whether the release of an obligor's liability under two promissory notes following partial payment also releases the guarantor's obligations as to the remaining debt. Appellant BBVA USA f/k/a Compass Bank challenges the trial court's summary judgment in favor of Francis and the trial court's denial of BBVA's motion for summary judgment. Because Francis broadly guaranteed the payment of the indebtedness on the notes and broadly waived any available defenses, we conclude he is liable to BBVA under the guaranty agreement for the remaining balance due. We reverse the trial court's judgment, render judgment in favor of BBVA, and remand the case for a determination of attorney's fees and costs and for a determination on the merits of Francis's third-party claims.

## *Background*

The facts are largely undisputed. Spring Excellence Surgical Hospital, LLC (Hospital) took out a loan from BBVA for $1 million and signed a promissory note. Francis, as a member of the LLC, personally guaranteed the loan. Hospital obtained another loan from BBVA for $200,000 and signed a second promissory note that was covered by the guaranty agreement.

Hospital defaulted on the first loan, which allowed BBVA to accelerate the second loan and seek payment of all indebtedness under the promissory notes. BBVA then sued Hospital, Francis, and other guarantors for breaches of the promissory notes and guaranty agreements. One of the other guarantors filed for bankruptcy, and the case was removed to bankruptcy court. BBVA pursued its claims in an adversary proceeding in the bankruptcy court.

BBVA settled with Hospital and two of the guarantors but not Francis. The settling parties included a "Reservation of Rights" in the settlement agreement,

agreeing that BBVA "reserves any and all rights and remedies it may have against Francis arising out of or connected to [the notes] and all related guaranties . . . or otherwise." The bankruptcy court approved the settlement and in its "Order Approving Compromise," expressly stated that the settlement agreement did "not contemplate [or] constitute a release or waiver by [BBVA] of . . . Francis . . . for any obligations related to the [BBVA] loans. [BBVA] reserve[s] any rights, defenses and remedies [it] may have against Francis." The bankruptcy court remanded BBVA's claims against Francis back to state court.

Francis filed a third-party petition against Hospital and the other guarantors. BBVA filed its motion for summary judgment against Francis, and Francis filed his competing motion on the basis that BBVA's release of Hospital extinguished Francis's liability as a guarantor. The trial court denied BBVA's motion and granted Francis's, then rendered final judgment. The trial court dismissed the third-party claims as moot and assessed "all costs of court" against BBVA.

### *Discussion*

In three issues, BBVA challenges the trial court's summary judgment rulings and its award of costs to third-party defendants.[1] Francis contends that BBVA's release of Hospital extinguished his personal obligations as a guarantor and thus the trial court did not err in granting summary judgment in his favor.

We review summary judgments de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that

---

[1] Because we are reversing the judgment, we need not address BBVA's third issue challenging the trial court's costs award.

party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id*. The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and he is entitled to judgment as a matter of law. *Id*. (citing Tex. R. Civ. P. 166(a)(c)). The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). Summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Hilburn v. Storage Tr. Props., LP*, 586 S.W.3d 501, 506 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Because the parties presented competing summary judgment motions and the trial court granted Francis's motion while denying BBVA's motion, we review the summary judgment evidence presented by both sides and render the judgment that the trial court should have rendered. *See Trial v. Dragon*, 593 S.W.3d 313, 316–17 (Tex. 2019); *Farmers Ins. Exch. v. Rodriguez*, 366 S.W.3d 216, 221 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

## I.      Francis's Motion for Summary Judgment Erroneously Granted

In its first issue, BBVA challenges the trial court's summary judgment in favor of Francis. Francis contends that his obligations as guarantor are tied to Hospital's liability and BBVA's release and settlement of Hospital's liability extinguished Francis's obligations under the guaranty. Francis moved for summary judgment on that ground, contending that his obligations are limited to the "Indebtedness of Borrower" under the language of the guaranty.

To determine a guarantor's liability, we look to the language of the guaranty agreement. *Norris v. Tex. Dev. Co.*, 547 S.W.3d 656, 662 (Tex. App.—Houston

4

[14th Dist.] 2018, no pet.). The interpretation of a guaranty agreement, like any contract, is a legal question we review de novo. *Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 206 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000)). We construe guaranties strictly according to their precise terms and must not extend the guarantor's obligations beyond the language of the agreement. *Norris*, 547 S.W.3d at 662-63. We also construe a guaranty as we would any other contract, and our primary concern is to ascertain and give effect to the written expression of the parties' intent. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011).

We afford terms their plain and ordinary meaning unless the contract indicates that the parties intended a different meaning. *Dynegy Midstream Servs., Ltd. P'ship. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). We consider the entire contract, respecting all provisions so that none are rendered meaningless. *Plains Expl. & Prod.*, 473 S.W.3d at 305. If possible, we avoid a construction that is unreasonable, inequitable, and oppressive. *Nat'l City Bank v. Ortiz*, 401 S.W.3d 867, 878 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (op. on reh'g) (citing *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam)). If a contract is unambiguous, we enforce it as written without considering parol evidence.[2] *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam).

**Indebtedness of Borrower**. The guaranty agreement includes a clause

---

[2] In his appellate brief, Francis does not assert that the contract is ambiguous but contends that any ambiguities must be construed in his favor. We do not see any ambiguities in the relevant portions of the guaranty agreement.

entitled "CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE," in which Francis "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of the *Indebtedness of Borrower* to Lender, and the performance and discharge of all borrower's obligations under the Note and the Related Documents." (Emphasis added.) "Indebtedness" is defined as follows:

> [A]ll of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, [BBVA's] reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that [Hospital] individually or collectively or interchangeably with others, owes or will owe [BBVA]. "Indebtedness" includes, without limitation, . . . *liabilities and obligations . . . barred or unenforceable against [Hospital] for any reason whatsoever*.

(Emphasis added.)

**Type of Guaranty**. Texas guaranty law recognizes two distinct types of guaranty: a guaranty of collection, which is conditional, and a guaranty of payment, which is unconditional. *Universal Metals & Mach., Inc. v. Bohart*, 539 S.W.2d 874, 877 (Tex. 1976); *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 594 S.W.3d 722, 759 (Tex. App.—Houston [14th Dist.] 2019, pet. dism'd w.o.j.). A guaranty of payment is an obligation to pay the debt when due if the debtor does not. *James Constr. Grp.*, 594 S.W.3d at 759. It requires no condition precedent to enforcement against the guarantor other than a default by the principal debtor. *Id*. The guaranty agreement includes express language stating that it "is a guaranty of payment and performance and not of collection," allowing BBVA to "enforce [the guaranty] against [Francis] even when [BBVA] has not exhausted [its] remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness."

**Language of Settlement Agreement**. The settlement agreement states:

> Except for the rights, obligations, and agreements included in this Agreement, upon the full and timely receipt of the Payments [BBVA] agrees it will not pursue [Hospital] for the deficiency that remains on [the notes] and agrees to release [Hospital] of any and all liability, claims, or causes of action, whether known or unknown, which arose out of, are connected with, or in any way related to [the loans] and [Hospital's] Claims.

Moreover, in the settlement agreement, BBVA reserved "any and all rights and remedies it may have against Francis arising out of or connected to [the notes]." The settlement agreement also includes a clause stating that the agreement "will in no manner constitute a release or waiver by [BBVA] of Francis . . . for [his] obligations under the [guaranty] or the full indebtedness existing under [the notes]." And the bankruptcy court acknowledged in its order approving the settlement that BBVA did not release its claims against Francis and further acknowledged that BBVA reserved "any rights, defenses and remedies" that might remain against Francis.

Despite this language in the settlement agreement and bankruptcy court's order approving the settlement, Francis contends that BBVA nevertheless is barred from asserting a deficiency claim against him as a guarantor based solely on BBVA's release of Hospital as the principal obligor. Francis contends, in other words, that because BBVA discharged the principal obligation, he is no longer liable as a guarantor. But BBVA did not discharge *the obligation*. Under the language of the settlement agreement, BBVA agreed not to pursue Hospital for the deficiency on the notes and released Hospital "of any and all liability, claims, or causes of action" related to the loans. BBVA did not release the indebtedness. Moreover, Francis can point to no language in the settlement agreement releasing BBVA's claims against him for the deficiency. To the contrary, BBVA expressly reserved its right to pursue any claims against Francis as guarantor. There is no factual support for Francis's claim that BBVA is precluded from enforcing the guaranty simply because it

7

released its claims against Hospital.

**More Extensive Liability as Guarantor**. Francis contends that language in the settlement agreement improperly "broadens the scope of [the] guaranty." We disagree. The settlement agreement is tied to Francis's obligations as set forth in the guaranty agreement. Notwithstanding language in the settlement agreement reserving BBVA's claims against Francis, Francis expressly agreed as a guarantor to assume more extensive liability than Hospital. Although a guarantor's liability on a debt is normally measured by the principal's liability, a guarantor may agree to a more extensive or limited liability. *84 Lumber Co., L.P. v. Powers*, 393 S.W.3d 299, 308 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Francis "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all borrower's obligations under the Note and the Related Documents." He expressly agreed to "a guaranty of payment and performance and not of collection," which required him unconditionally to pay the debt when due if Hospital did not. *See James Constr. Grp.*, 594 S.W.3d at 759. He explicitly stated in the guaranty that (1) BBVA could enforce the guaranty without exhausting its remedies against Hospital, (2) indebtedness as defined under the guaranty included any liabilities and obligations "barred or unenforceable against [Hospital] for any reason," (3) payments made by Hospital would not "discharge or diminish" Francis's obligations "for any remaining or succeeding indebtedness," and (4) the guaranty would continue until "all the [i]ndebtedness" was "fully and finally paid and satisfied."

Perhaps most importantly, Francis waived "any and all rights or defenses based on suretyship or impairment of collateral . . . other than actual payment." A waiver of "any and all rights" broadly waives all possible defenses. *See Moayedi v.*

*Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 8 (Tex. 2014) ("To waive all possible defenses seems to very clearly indicate what defenses are included: all of them."). This language establishes the intention that the guaranty would not be subject to any defenses other than full payment. *See id.*; *see also Holmes v. Graham Mortgage Corp.*, 449 S.W.3d 257, 265 (Tex. App.—Dallas 2014, pet. denied) (holding, based on plain language of guaranty agreement, that guarantor waived all defensive theories, including, among others, payment, accord and satisfaction, and cancellation of debt).

Francis argues the "non-release provisions and waivers of defenses" in the guaranty agreement are "immaterial." We disagree. As discussed, our analysis is based on a plain reading of the guaranty agreement. Its binding language does not contemplate a release of Francis's liability as a guarantor based on any release of Hospital's liability. *See, e.g., Int'l Interests, L.P. v. Wadley*, No. CV H-05-19, 2008 WL 11389571, at *5 (S.D. Tex. Sept. 9, 2008). Francis presented no evidence in support of his argument that the release of BBVA's claims against Hospital also released BBVA's claims against him.[3] Accordingly, the trial court erred in granting summary judgment in favor of Francis. We sustain BBVA's first issue.

## II.    BBVA's Motion for Summary Judgment Erroneously Denied

In its second issue, BBVA challenges the trial court's denial of its summary judgment motion on its breach of guaranty claim against Francis. To meet its

---

[3] The only opinion cited by Francis in support of his argument is unpersuasive, has no precedential value in this court, and is factually distinguishable. *See CoastalStates Bank v. Hanover Homes of S.C., LLC*, 759 S.E.2d 152 (S.C. Ct. App. 2014). The court noted in that opinion, "where the creditor enters into a compromise agreement with the debtor, the effect of which is to release the debtor from further liability, the guarantor can no longer be held liable, *unless the guaranty contract or the compromise agreement provides otherwise.*" *Id.* at 159 (emphasis added). Here, both the guaranty agreement and the settlement agreement provide that BBVA reserved its claims against Francis for any remaining deficiency after BBVA released Hospital's liability.

summary judgment burden, BBVA was required to show (1) the existence and ownership of the guaranty, (2) the terms of the underlying contract, (3) the occurrence of the condition on which liability is based, and (4) the guarantor's failure or refusal to perform the promise. *Norris*, 547 S.W.3d at 659. BBVA presented evidence of these elements through an affidavit and the loan documents.

BBVA's Vice President for Asset Recovery Management and Solutions Division Kenneth J. Daigrepont attested to the terms of the two loans and the guaranty. The loan documents at issue included, among other things, the loan agreements, promissory notes, and guaranty agreement. Daigrepont attested that Hospital failed to pay the principal balance on the first note when it became due. BBVA sent a notice of maturity and default to Hospital and all the guarantors. BBVA also sent a notice of default and intent to accelerate the second note based on Hospital's default on the first note, as authorized under the loan agreements. Hospital did not cure its defaults and stopped making monthly payments. After BBVA sued Hospital and the guarantors, BBVA eventually settled with Hospital and three of the guarantors, leaving a deficiency on the first note. Francis as guarantor did not make any payments. Daigrepont calculated the remaining balance of principal and interest due after the settlement payments. According to Daigrepont, the second note had been paid off with settlement funds, but the balance owed under the first note totaled $356,534.28, plus interest from January 7, 2020 through the date of judgment. The affidavit and supporting loan documents thus provide evidence supporting every element of BBVA's breach of guaranty claim.

Francis combined his cross-motion for summary judgment and response to BBVA's motion for summary judgment. In addition to asserting that BBVA's release of Hospital's liability extinguished his liability, addressed above, Francis also incorporated by reference "any additional arguments raised by Third-Party

10

Defendants in opposition to BBVA's summary judgment motion to the extent applicable to the claims against, and supportive of the defenses of, Dr. Francis." Accordingly, we address these arguments.

The third-party defendants responded to BBVA's summary judgment motion on several grounds. First, they asserted, as did Francis, that Francis's liability was extinguished by the settlement agreement, an argument we conclude is without merit. Second, they contended that there are inconsistencies between BBVA's motion for summary judgment and the proof of claim it filed in the bankruptcy proceeding, which purportedly created a material issue of fact as to the amounts due under the notes. Third, they asserted that the second note was "never properly accelerated." Fourth, they contended that the person who signed the second note on behalf of Hospital lacked authority. They did not, however, submit any evidence or point to any evidence in the record to support these arguments, so no issues of material fact are shown by these arguments.

The third-party defendants also objected to BBVA's evidence, contending that the affidavit is contradictory, again asserting the person who signed the second note lacked authority, Francis did not sign a guaranty for the second note, and the affidavit fails to establish legal fees. The trial court did not rule on these objections, and to the extent that they are defects of form, they are waived. *See Grace Interest, LLC v. Wallis State Bank*, 431 S.W.3d 110, 124 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("To complain of . . . a defect [of form in an affidavit], a party must object in writing to the form of the summary judgment evidence, place the objection before the trial court, and obtain a ruling."); *see also Vice v. Kasprzak*, 318 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Failure to secure the trial court's ruling on the objections to the summary judgment evidence also waives the complaint for appeal."). Moreover, the third-party defendants did not

present or point out any evidence in support of these arguments.

As to the argument that the affidavit is contradictory, we further note that the third-party defendants took issue with Daigrepont's initial statement that BBVA accelerated the second note on November 29, 2017 and later statement that BBVA accelerated the note on November 30, 2017. We conclude these statements showing a one-day discrepancy do not raise a material fact issue. As to the lack of a separate guaranty for the second note, the guaranty agreement states that Francis agreed to a continuing guaranty, which includes indebtedness "now existing or hereinafter arising or acquired, on an open and continuing basis." *See Sonne v. F.D.I.C.*, 881 S.W.2d 789, 793 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("A continuing guaranty is one which contemplates a future course of dealing between the lender and debtor and is intended to apply to other liabilities as they accrue."). Accordingly, Francis guaranteed funds Hospital borrowed at the time he signed the guaranty and afterwards. Lastly, BBVA sought to supplement its motion with proof of attorney's fees if the trial court granted the motion, so that issue was not before the trial court. We conclude third-party defendants failed to show by their arguments any genuine issues of material fact.

BBVA met its burden to present evidence in support of each element of its breach of guaranty claim, and no genuine issue of material fact exists as to any element of that claim on this record. Accordingly, we conclude the trial court erred in denying BBVA's motion for summary judgment. We sustain BBVA's second issue.

### *Conclusion*

We reverse the trial court's judgment in favor of Francis, render judgment in favor of BBVA on its breach of guaranty claim, and remand for a determination of attorney's fees and costs to which BBVA may be entitled. *See* Tex. Civ. Prac. &

12

Rem. Code § 38.001. As noted, the trial court also dismissed Francis's third-party claims as moot. In light of our reversal of the trial court's summary judgment and rendition of judgment in favor of BBVA, we also remand for a determination on the merits of Francis's third-party claims.[4]

/s/    Frances Bourliot
       Justice

Panel consists of Justices Jewell, Bourliot, and Poissant.

---

[4] *See, e.g., Powell v. CIT Bank, N.A.*, No. 14-15-00949-CV, 2017 WL 4228893, at *6 (Tex. App.—Houston [14th Dist.] June 8, 2017, no pet.) (substitute mem. op.) (reversing trial court's judgment dismissing claim as moot because basis for trial court's mootness determination was no longer present).